T. R. HASSMAN v. FIRST STATE BANK OF SWATARA AND OTHERS.[1]

May 29, 1931.

No. 28,433.

*J. D. Sullivan,* for appellants.
*Ryan, Ryan & Ryan,* for respondent.

[1]Reported in 236 N. W. 921.

454

LORING, J.

During his lifetime A. W. Clement commenced an action against these defendants to cancel a contract for the purchase of real estate on the ground of fraud or to recover damages in the event that a cancelation could not be had. Before the case came to trial Clement died, and his administrator. was substituted as a party plaintiff. Clement will hereinafter be referred to as the plaintiff. Upon the trial at the close of the evidence the action against the bank was dismissed. Certain questions were submitted to a jury, which answered them all in favor of the plaintiff. The court adopted the jury's answers, made additional findings in favor of the plaintiff, and ordered judgment in his favor for the sum of $3,500. The individual defendants moved for a new trial, and from the order denying their motion they have appealed.

The defendant Mushel was at the time of the transaction in question the president of the defendant bank but did not reside at Swatara, the town in which the bank was located and in which also was located the property sold by Mushel to the plaintiff and which was the subject matter of the transaction here involved.

The property sold to the plaintiff was a building and lot adjoining the bank and was leased for two years to a tenant at the rate of $39 a month. The court found that this property was worth $4,000 at the time of the transaction with the plaintiff. There was some evidence in the record that its value did not exceed $3,300, and as we view the testimony the court's finding of value is amply sustained.

The defendant McGee was cashier of the Swatara bank, with which the plaintiff had been doing business for approximately ten years, and the plaintiff claims that McGee was his financial adviser upon whose judgment and advice he relied in his business transactions. Plaintiff had come to Aitkin county from Iowa. His father was well to do and owned a large tract of land in Aitkin county which the plaintiff unsuccessfully endeavored to operate. Plaintiff was a man of poor business judgment and squandered his money on unnecessary purchases and in unprofitable enterprises. Medical

testimony shows that for some years he had been suffering from the effects of a disease which undermined his judgment and tended to destroy his mental capacity. His lack of business judgment was well known to McGee, who had seen his inability to take care of his money. Some time previous to the transaction here in question the plaintiff had purchased from one Gilson a garage business in Swatara, paying down the sum of $1,500 and promising to pay a balance of $2,500 or $3,000 therefor. Plaintiff ran this garage business only a few months before he had to close it up for lack of funds. He had received $5,000 from his father's estate at the time he made the purchase, and in a very short time he had squandered the entire sum.

Shortly before the transaction here in question it became known to McGee that Clement was to receive $10,000 from his father's estate. McGee called Clement's attention to the advisability of purchasing Mushel's building with the money, as an investment, stating that it was rented for $45 a month, which could be raised to $50 a month. Clement was looking for an investment which would pay his wife a regular income. McGee repeatedly urged the plaintiff to buy the building and advised him that it was a good investment and would give him a good return on his money, with the result that ultimately Clement purchased the property from Mushel for $6,000 in cash in addition to his equity in the garage property, which was taken in at the sum of $1,500, making a total consideration of $7,500. The four questions submitted to the jury were:

(1) "Was plaintiff at the time of the transaction involved incapable of properly managing his business affairs? Answer: Yes.

(2) "Was such fact known to defendant W. S. McGee? Answer: Yes.

(3) "Did the defendant W. S. McGee stand in a confidential or fiduciary relationship to the plaintiff? Answer: Yes.

(4) "Was the sale of the building obtained by the fraud and undue influence of defendant W. S. McGee? Answer: Yes."

The court, after finding that these answers made by the jury were supported by the evidence, adopted them as part of its findings and

also found that in the sale of the building to the plaintiff, McGee acted as an agent of the defendant Mushel, and that all of the fraud and undue influence exercised by the defendant McGee on said Clement was "done and exercised as the agent of the defendant Mushel," and that the sale was procured by the exercise of such fraud and undue influence.

The medical and lay evidence amply supports the finding that plaintiff was incompetent to handle his business affairs at the time he purchased Mushel's building, and it is not seriously disputed that McGee knew this. The defendants contend that the evidence does not support the finding that a confidential and fiduciary relation existed between plaintiff and McGee. It clearly appears from his deposition that Clement had habitually sought McGee's advice for some ten years, that the trust and confidence so often reposed in country bankers by their customers existed in this case, and that because of the infirmity of Clement's judgment it was a potent influence in getting him to purchase Mushel's property. It is true that the evidence in support of this is largely in plaintiff's deposition, and defendants contend that the deposition is unworthy of belief on account of plaintiff's mental condition. While the evidence shows that his disease had undermined his judgment, there is nothing in the record that tends to show that it had affected his recollection. We think the evidence sustains the finding that the relationship between plaintiff and McGee was a fiduciary one. Picha v. Central Met. Bank; 161 Minn. 211, 201 N. W. 315, 203 N. W. 617; Kerr v. Simons, 166 Minn. 195, 207 N. W. 305.

The defendants next contend that no fraud was perpetrated on the plaintiff; that McGee merely answered questions in regard to the desirability of the deal. The record does not bear this out. According to the plaintiff, McGee called the matter to his attention, urged plaintiff to buy, and told him it was a good deal, a good investment, and would bring him in $50 a month and would give him a good return on his money. Ordinarily such talk would be regarded as mere trade talk, but where a confidential relationship exists such talk may constitute fraud. Voss v. Scott, 180 Minn. 88-90, 203 N. W. 262.

It is also contended that plaintiff did not pay $6,000 in money in addition to the garage property. He testified positively that he did, and the defendants did not show that such testimony was incorrect or satisfactorily explain the disposition of the proceeds of the check for $7,736.29 which he gave the bank the day the deal was closed. We think the finding should stand. We also are of the opinion that the circumstantial evidence of McGee's agency for Mushel was sufficient.

The admission of the note for $6,000, which plaintiff appears to have given in the preliminary negotiations and which is claimed to represent the money consideration paid Mushel, we do not regard as error.

The order appealed from is affirmed.